# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

JACKIE and ANTHONIE TALARICO, Each
Individually and as Next Friends to A.T. and R.T.;
SARAH and ANTHONY ALGER, Each Individually
and as Next Friends to A.A. and E.A.; ANTHONY
BAILLIE and CEANNA BLOOMLEDOUX, Each
Individually and as Next Friends to I.B.; ASHLEY
BASTIAN, Individually and as Next Friend to W.B.
and M.B.; MELISSA and LEE BRENNAN, Each
Individually and as Next Friends to C.C., S.B., and
C.B.; JAIME and LEVI BROWN, Each Individually
and as Next Friends to E.B.; MAYRA and
KENYATTA BRYANT, Each Individually and as
Next Friends to K.A.B, K.D.B, K.D'W.B. and
K.D'S.B.; WAYNE and LISA MARIE BUSH, Each
Individually; KRISTI ANN CAPUTO and
BRANDON ROMANSKY, Each Individually and as
Next Friends to J.R. and C.R.; STEPHEN CATES,
Individually; SHARON CATES, Individually;
HANNAH CATES, Individually; ALLISON MARIE
CHOCIANOWSKI, Individually and as Next Friend
to P.C., K.C., and A.C; SAVANNAH DEIS,
Individually and as Next Friend to A.E.D. and
A.M.D.; KAYLEE JO and GRANT DOWELL, Each
Individually and as Next Friends to D.D.; NELLIE
FEENEY and JOEL A.H. REEVES, Each Individually
and as Next Friends to I.C. and L.C.; AMANDA and
MICHAEL FELLOWS, Each Individually and as
Next Friends to M.F. AND G.F.; ZUKI and
ALEJANDRO FIGUEROA, Each Individually;
MCKAYLA and DUSTIN FOTHERGILL, Each
Individually and as Next Friends to B.F.; BRITTANY
and AARON FRATES, Each Individually and as Next
Friends to A.F. and V.F.; HIRAM and ANA
GONZALEZ, Each Individually and as Next Friends
to A.R.; LINDSAY and ADAM GRAHAM, Each
Individually and as Next Friends to R.G.;
VIRGININA and CALEB GUESS, Each Individually
and as Next Friends to S.W., C.W., L.G. and G.G.;
CARLOS and JESSICA HERNANDEZ, Each
Individually and as Next Friends to H.H.; RICK
HESTER, JR., Individually and as Next Friend to
L.H.; CAITLYN and BRANDON HURD, Each
Individually and as Next Friends to R.H., W-C.H.,

CASE NO.: _____

P.H., and H.H.; CANDACE and MATTHEW
JOHNSTON, Each Individually and as Next Friends
to A.J.; ALBERT KING, JR. and NATALIE KING,
Each Individually and as Next Friends to Ja.K., and
Jak.K.; AUBRINA KING, Individually; SA'NAYVIA
KING, Individually; JESSA and KIMO LEE, Each
Individually and as Next Friends to K.L. and J.L.;
LARISSA ANNE and REFUGIO MARTINEZ, Each
Individually and as Next Friends to CHRISTIAN
MARTINEZ; DANIEL MASTRIANI, Individually
and as Next Friend to S.M. and E.M.;
CHRISTOPHER and MEG MCCARTHY, Each
Individually and as Next Friends to A.M., J.M., and
R.M.; DEREK MCQUAIG and CHELSEA
JOHNSON, Each Individually and as Next Friends to
K.M., M.M., and N.M.; JUSTIN and MORGAN
MELFORD, Each Individually and as Next Friends to
Z.M. and B.M.; BRANDY RAE and DANIEL
MITCHELL, Each Individually and as Next Friends to
C.M.; FIONN CROCKETT, Individually; KAYLA
and JACOB MOODY, Each Individually and as Next
Friends to B.M.; KAYLA and STEPHEN O'BRIEN,
Each Individually and as Next Friends to M.O. and
R.O; LESLIE and SEAN PHILLIPS, Each
Individually; ANNALYN POTTER-SOZA and LEVI
POTTER, Each Individually and as Next Friends to
M.P.; MARIE ROBBINS, Individually; SAMANTHA
and JOSHUA RODAS, Each Individually; DARCY
SANCHEZ, Individually; CHRISTOPHER
SANCHEZ, Individually; SYMONE SANCHEZ,
Individually; JELENA SANCHEZ, Individually;
LYRIC and ANTHONY SEATON, Each Individually
and as Next Friends to T.S.; PAIGE and CODIE
SECHI, Each Individually and as Next Friends to
C.S.; JULIE and ANTRANIG SEROP, Each
Individually; LEILAH and JASON SMITH, Each
Individually and as Next Friends to Ba.S. and Bo.S.;
JOHN STEVENS, Individually; TAYLOR CHASE
and JESSICA STROUD, Each Individually and as
Next Friends to L.L.S. and L.K.S.; SHANNA and
DEREK TAYLOR, Each Individually and as Next
Friends to M.F.; JENNIFER TELFER, Individually
and as Next Friend to D.T., and S.T.; DREYDEN
TELFER, Individually; KAYLA TIMPONE and
DAVID DANFORD, JR, Each Individually and as
Next Friends to L.A.D. and L.J.D; ASTRID

TROTTER, Individually and as Next Friend to Ki.T.
and Ka.T.; MEGHAN KELLY-VANDERHOOF and
RICHARD JAMES VANDERHOOF, Each
Individually; COREY JAMES VANDERHOOF,
Individually; KIAN DOLAN VANDERHOOF,
Individually; MATTHEW VIGREN and KENDRA
ULRICH, Each Individually and as Next Friends to
C.V.; JANNINE and JOSHUA VOILES, Each
Individually and as Next Friends to P.V., L.V. and
C.V.; KILEY ANN and SAMUEL WINTER, Each
Individually and as Next Friends to T.W. and D.W.;
MICHELE and WILLIAM WYLIE, Each
Individually,

      Plaintiffs,

vs.

BALFOUR BEATTY COMMUNITIES, LLC;
SOUTHEAST HOUSING LLC; BALFOUR
BEATTY MILITARY HOUSING
MANAGEMENT LLC; BBC MILITARY
HOUSING – NAVY SOUTHEAST LLC; and
BALFOUR BEATTY INVESTMENTS, INC.,

      Defendants.

_____

## DEFENDANTS' NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442, and 1446, Defendants Balfour Beatty

Communities, LLC, Southeast Housing LLC, Balfour Beatty Military Housing Management LLC,

BBC Military Housing – Navy Southeast LLC, and Balfour Beatty Investments, Inc. ("BBC" or

"Defendants") give notice of the removal of this action from the Circuit Court of the Sixteenth

Judicial Circuit in and for Monroe County, Florida (the "State Court") to this Court. Defendants

respectfully state as grounds for removal:

## I.      **PROCEDURAL POSTURE**

1.      On March 27, 2025, Plaintiffs filed a lawsuit against Defendants in the State Court, captioned *Jackie and Anthonie Talarico, et al. v. Balfour Beatty Communities, LLC, et al*. (the "State Court Action").

2.      On April 7, 2025, Plaintiffs served a summons and Complaint upon each of the Defendants in the State Court Action. The summonses Plaintiffs served on the Defendants are attached as composite Exhibit 1, and a representative example of the Complaint Plaintiffs served on those Defendants is attached as Exhibit 2.

3.      The following documents were also filed in the State Court Action:

a.   Signed Summons – Southeast Housing LLC (April 1, 2025)

b.   Signed Summons – Balfour Beatty Investments, Inc. (April 1, 2025)

c.   Signed Summons – BBC Military Housing-Navy Southeast LLC (April 1, 2025)

d.   Signed Summons – Balfour Beaty Military Housing Management LLC (April 1, 2025)

e.   Signed Summons – Balfour Beaty Communities, LLC (April 1, 2025)

f.   Petition/Motion to Appear Pro Hac Vice-Kristina Baehr (April 7, 2025)

g.   Petition/Motion to Appear Pro Hac Vice-Michael Weitzner (April 7, 2025)

h.   Petition/Motion to Appear Pro Hac Vice-Vincent Colatriano (April 7, 2025)

i.   Return of Service – Balfour Beatty Investments (April 10, 2025)

j.   Return of Service – Balfour Beatty Military Housing Management LLC (April 10, 2025)

k.   Return of Service – Balfour Beaty Communities, LLC (April 10, 2025)

l.   Return of Service – BBC Military Housing-Navy Southeast LLC (April 10, 2025)

m.  Return of Service – Southeast Housing LLC (April 10, 2025)

n.  Notice of Appearance of Laura Farrant and Veronica Daniel (April 24, 2025)

o.  Defendants' Motion for Extension of Time to Respond to Complaint (April 25, 2025)

p.  Plaintiffs' Response to Motion for Extension of Time (April 30, 2025)

q.  Notice of Hearing (April 30, 2025)

r.  Order Granting Pro Hac Vice-Kristina Baehr (May 6, 2025)

s.  Order Granting Pro Hac Vice-Michael Weitzner (May 6, 2025)

t.  Order Granting Pro Hac Vice-Vincent Colatriano (May 6, 2025)

Copies of the documents described in this Paragraph are attached as composite Exhibit 3.

4.      To date, no process, pleadings, or orders related to the State Court Action other than the documents attached as Exhibit 1, Exhibit 2, and composite Exhibit 3 have been served upon Defendants, and no other documents have been filed in the State Court Action.

## II.    NATURE OF THE CASE

5.      Congress enacted the Military Housing Privatization Initiative ("MHPI") in 1996 to privatize military housing. Under this initiative, a branch of the armed forces can establish a public-private venture ("PPV") with a private entity to operate and manage military housing on government land. *See generally* 10 U.S.C. §§ 2871-85. Such an arrangement typically involves a branch of the armed forces leasing land and transferring existing housing assets to a private entity selected through a competitive bidding process and then entering into a PPV agreement with that entity to develop, maintain, and manage military housing on government property.

6.      Plaintiffs include active duty servicemembers in the United States armed forces and their families who lived in rental housing on base at Naval Air Station Key West ("NAS Key

West"). According to its website, "NAS Key West's national security mission supports operational and readiness requirements for Department of Defense, Department of Homeland Security, National Guard units, federal agencies, and allied forces."[1]

7.      Defendants Balfour Beatty Communities, LLC, Southeast Housing LLC, Balfour Beatty Military Housing Management LLC, and BBC Military Housing – Navy Southeast LLC own, operate, and manage the rental housing on NAS Key West as an MHPI contractor via a contract with the federal government and related contracts described below.[2]

8.      Defendant Southeast Housing LLC ("Southeast Housing"), a Delaware limited liability company with its principal place of business in Pennsylvania, is a PPV formed to own, manage, and operate residential rental housing units in support of U.S. Navy operations at 11 Navy facilities in the Southeastern United States, including NAS Key West (the "Project"). Exhibit 4, § 2.03. Southeast Housing has two members: (a) Defendant BBC Military Housing – Navy Southeast LLC ("BBC-NSE"), a Delaware limited liability company with its principal place of business in Pennsylvania; and (b) the United States of America, Department of the Navy. Id. at 1, 47.

9.      On or around October 1, 2007, BBC-NSE entered into a Limited Liability Company Operating Agreement with the U.S. Navy with respect to Southeast Housing. Id. at 1. On or around November 17, 2011, BBC-NSE and the U.S. Navy entered into an Amended and Restated Limited Liability Company Operating Agreement. Id..

10.     On or around October 1, 2007, BBC-NSE and the U.S. Navy entered into a 50-year ground lease with respect to, inter alia, NAS Key West (the "Ground Lease"). Exhibit 5, § 1.1,

---

[1]      See Welcome to Naval Air Station Key West, U.S. Navy, https://cnrse.cnic.navy.mil/Installations/NAS-Key-West/ (last visited on May 1, 2025).

[2]      While Defendant Balfour Beatty Investments, Inc. joins in this Notice of Removal, that entity has no connection to the events alleged in Plaintiffs' Complaint and will be moving to dismiss upon removal.

Ex. A-5; § 2.1.[3] The Ground Lease provides that the U.S. Navy continues to own the land that is the subject of the lease. *Id*. § 1.1 (noting fee title to the relevant leased premises would continue to vest with the federal government). The Ground Lease also specifies that the leased premises are to be used solely for the management, leasing, and maintenance of residential housing units. *Id*. §§ 2.2, 7.1. BBC-NSE has also agreed to operate and maintain the leased premises in accordance with the Ground Lease. *Id*. § 13.1.

11.     Southeast Housing entered into a property management agreement with Balfour Beatty Military Housing Management LLC, a Delaware limited liability company with its principal place of business in Pennsylvania, ("BBC Management") to provide property management and maintenance services with respect to the Project on October 1, 2007, <u>Exhibit 6</u> at 1-2, which was amended and restated by the parties as of November 17, 2011. *Id*. at 1.[4] The Property Management Agreement incorporates an Operations, Maintenance and Management Plan (the "Management Plan"). *Id*. at Exhibit A. The Management Plan mandates certain elements of facilities maintenance and includes an extensive Environmental Management Plan, with express requirements for mold, asbestos, and lead-based paint maintenance activities. *Id*. at Exhibit A, Attachment 5E.

12.     There are 192 individual Plaintiffs or, when families are considered, a total of 55 groups of Plaintiffs. Fifty-four of these groups lived in housing on NAS Key West at the time of

---

[3]     The Ground Lease and all of its accompanying exhibits exceeds 16,000 pages in length. In order to avoid overburdening the record, the document BBC has designated as Exhibit 5 is made up of the Ground Lease itself and Exhibit A-5 thereto (*i.e.*, the NAS Key West legal land description). BBC will make the entirety of the Ground Lease's accompanying exhibits available to the Court upon request, subject to the Defendants' Motion for Leave to File Documents Under Seal.

[4]     Exhibits 4, 5, and 6 are the subject of Defendants' Motion for Leave to File Documents Under Seal, filed contemporaneously herewith.

the events alleged in the Complaint that was owned, operated, and managed by Defendants (the remaining family was a cleaning vendor hired by Defendants who performed work at NAS Key West). Ex. 2, ¶¶ 151-738.

13.     The Plaintiffs who lived on NAS Key West allege they lived in substandard housing and that Defendants did not adequately respond to their complaints regarding the condition of their homes. *Id.*, ¶ 122.

14.     The State Court Action purports to assert claims against Defendants for breach of contract, negligence, gross negligence, nuisance, negligent infliction of emotional distress, breach of the warranty of habitability, fraud, third-party beneficiary of a contract, negligence *per se*, medical monitoring, and violations of the Florida Deceptive and Unfair Trade Practices Act (the "FDUPTA"). *Id.*, ¶¶ 739–850.

15.     NAS Key West housing includes the neighborhoods Truman Annex, Trumbo Point, and Sigsbee Park. *See id.*, ¶ 106.

16.     Of the 55 Plaintiff groups, one lived in Truman Annex (*id.*, ¶ 561); eight lived in Trumbo Point (*id.*, ¶¶ 163, 195, 225, 305, 470, 504, and 623); and the remainder (with the exception of the Figueroas) lived in Sigsbee Park (*id.*, ¶¶ 173, 185, 204, 214, 233, 243, 251, 265, 275, 283, 293, 313, 328, 341, 349, 358, 373, 383, 399, 410, 423, 432, 451, 462, 484, 493, 514, 526, 542, 570, 579, 592, 604, 613, 632, 648, 671, 681, 692, 703, 714, and 723).

17.     The State of Florida ceded jurisdiction over Truman Annex to the federal government on or about March 8, 1911. Exhibit 7.

18.     The State of Florida ceded jurisdiction over Trumbo Point to the federal government on or about December 18, 1940. Exhibit 8 at 1–2. The federal government accepted jurisdiction over Trumbo Point on or about January 7, 1941. *Id.* at 4.

19.     The State of Florida ceded jurisdiction over Sigsbee Park to the federal government on or about September 5, 1951. Exhibit 9 at 1–3. The federal government accepted jurisdiction over Sigsbee Park on or about October 8, 1951. *Id*. at 4.

## III.     AUTHORITY FOR REMOVAL AND JURISDICTION OF THIS COURT

### A. *Federal Question Jurisdiction*

20.     This action is removable based on federal question jurisdiction.

21.     Where the district courts of the United States have original jurisdiction over a civil action brought in state court, a defendant may remove that action from state court to the United States district court for the district embracing the place where such action is pending. 28 U.S.C. § 1441(a).

22.     Federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Section 1331 provides the Court with original jurisdiction over the State Court Action for at least two reasons.

23.     *First*, this Court has original jurisdiction over the State Court Action under Section 1331 because it is a controversy arising on NAS Key West, which is a federal enclave.

24.     The federal government has the power to acquire land from states for certain uses and to exercise jurisdiction over those lands, which are known as federal enclaves. *King v. Akima Global Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019); *see also* U.S. Const. art. I, § 8, cl. 17. The federal government can create a federal enclave by acquiring land by purchase or condemnation with the consent of the state in which the land is located. *Paul v. United States*, 371 U.S. 245, 264 (1963). More specifically, to exercise federal legislative jurisdiction over an enclave: (a) the federal government must acquire land within a state; (b) the state must cede or consent to

federal jurisdiction over that land; and (c) the federal government must accept jurisdiction.[5] *Meadows v. Northrup Grumman Innovation Sys., Inc.*, 436 F. Supp. 3d 879, 884 (W.D. Va. 2020); *see also Paul*, 371 U.S. at 264.

25.     The   Constitution's   federal   enclave   clause   is   given   the   "broadest construction . . . one which makes it cover all structures and all places necessary for carrying on the business of the national government." *United States v. Tucker*, 122 F. 518, 522 (W.D. Ky. 1903).

26.     Whether the United States has acquired jurisdiction over a federal enclave is a federal question. *Paul*, 371 U.S. at 267.

27.     "Federal enclave jurisdiction is a subspecies of federal question jurisdiction, *which is a form of subject matter jurisdiction* vested in federal district courts by 28 U.S.C. § 1331." *Lawler v. Miratek Corp.*, No. EP-09-CV-252-KC, 2010 WL 743925, at * 2 (W.D. Tex. Mar. 2, 2010) (emphasis added). Because Congress has legislative jurisdiction over federal enclaves, federal courts must also have subject matter jurisdiction over controversies that arise on such enclaves. *See Mater v. Holley,* 200 F.2d 123, 124–25 (5th Cir.1953); *United States v. Goings*, 504 F.2d 809, 811 (8th Cir. 1974).

28.     At least one court in Florida has already determined that NAS Key West is a federal enclave. *See* Final J. at 3–4, *Southeast Housing, LLC v. Borglum* (Fla. Cir. Ct. Apr. 1, 2014) (No. 2012-CA-831-K), *aff'd sub nom. Russell v. Southeast Housing, LLC*, 162 So.3d 262 (Fla. Dist. Ct.

---

[5]     The third element need not be met if the transfer of jurisdiction took place prior to 1940, as prior to 1940 "acceptance of jurisdiction over lands acquired by the United States was presumed in the absence of evidence to the contrary." *United States v. Davis*, 726 F.3d 357, 363 (2d Cir. 2013) (citing, *inter alia*, *United States v. Cassidy*, 571 F.2d 534, 536 (10th Cir. 1978)) (quotation marks omitted).

App. 2015) (the federal government acquired jurisdiction over Truman Annex, Trumbo Point, and Sigsbee Park by virtue of several deeds of cession). Exhibit 10.

29.     Even if a Florida court had not already determined that NAS Key West is a federal enclave, Defendants can demonstrate that NAS Key West is a federal enclave.

30.     NAS Key West is a federally owned facility. Exhibit 11.

31.     As explained above, the State of Florida voluntarily ceded jurisdiction over each of the relevant areas of NAS Key West to the federal government between 1911 and 1951 and, where required, the federal government accepted that jurisdiction. Ex. 7; Ex. 8; Ex. 9. In October 1991, the Navy temporarily ceded jurisdiction of the land back to the State of Florida in order to address certain "legal and security problems." Exhibit 12. The following month, the State of Florida again voluntarily "cede[d] to the United States of America exclusive jurisdiction over" the relevant areas of NAS Key West, subject to the condition that "all process, civil or criminal, issuing under Authority of the State of Florida, or any of the courts or judicial officers thereof, may be executed by the proper officers thereof" within the relevant areas. Exhibit 13. These tracts of land accordingly constitute federal enclaves. *See United States v. State Tax Comm'n of Miss.*, 412 U.S. 363, 371 (1973); *Mater*, 200 F.2d at 124-25; *Federico v. Lincoln Mil. Hous.*, 901 F. Supp. 2d 654, 663-76 (E.D. Va. 2012).

32.     Moreover, all the pertinent events alleged in the Complaint took place within a federal enclave. Where at least some of a plaintiff's alleged injuries occurred on a federal enclave, removal of the plaintiff's action to federal court based on federal question jurisdiction is appropriate. *Amtec Corp. v. U.S. Centrifuge Sys., L.L.C.*, No. CV-12-RRA-1874-NE, 2012 WL 12897212, at *10–11 (N.D. Ala. Dec. 6, 2012), *objections overruled sub nom. Amtec Corp. v. US Centrifuge Sys. LLC*, No. 5:12-CV-1874, 2013 WL 12147712 (N.D. Ala. May 29, 2013); *see also*

*Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (actions arising from incidents occurring on federal enclaves may be removed to federal court based on federal question jurisdiction); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing, *inter alia*, *Mater*, 200 F.2d at 125) (same).

33.     This Court therefore has federal question jurisdiction over this action, and removal to this Court under Section 1331 is appropriate.

34.     *Second*, even if the events alleged in the Complaint had not taken place on a federal enclave, this Court would still have jurisdiction under Section 1331 because Count VIII of the Complaint purports to assert claims for breaches of Defendants' contracts with the federal government, and therefore raises substantial questions of federal law.

35.     Suits "to enforce contracts with federal agencies are governed by federal common law . . . and as a result arise under federal law for purposes of Section 1331." *W. Sec. Co., Subsidiary of Universal Mortg. Corp. v. Derwinski*, 937 F.2d 1276, 1279 (7th Cir. 1991); *see also Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016) ("federal law 'exclusively' governs interpretive questions concerning the 'obligations to and rights of the United States under its contracts.'") (citation omitted); *Clem Perrin Marine Towing, Inc. v. Panama Canal Co.*, 730 F.2d 186, 189 (5th Cir. 1984).

36.     Here, Count VIII of the Complaint alleges Defendants "breached the requirements of" contracts between Defendants, the United States, and the Department of the Navy, including the Ground Lease. Ex. 2 ¶¶ 815–816. The Complaint further alleges Defendants "breached the duty of good faith and fair dealing implied in the [federal] contracts." *Id*. ¶ 817.

37.     Both the interpretation of Defendants' obligations under the federal contracts and the identification of additional duties allegedly arising from the duty of good faith and fair dealing

implied in those contracts involve substantial questions of federal law. *See W. Sec. Co*, 937 F.2d at 1279; *Caltex Plastics, Inc.*, 824 F.3d at 1159; *Clem Perrin Marine Towing, Inc.*, 730 F.2d at 189. Furthermore, the Ground Lease provides that it shall be governed by the federal laws of the United States. Ex. 5, § 27.9.

38.     This Court therefore has original federal-question jurisdiction under Section 1331 over at least Count VIII of the Complaint, permitting removal of the entire suit under 28 U.S.C. §§ 1441(a) and (c).

### B. *Federal Officer Jurisdiction*

39.     This action is also removable under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

40.     28 U.S.C. § 1442(a)(1) conveys jurisdiction to federal courts over a claim directed at a person acting under an officer of the United States or any agency thereof, if the claim is for or relating to any act done under the color of such office.

41.     The federal officer removal statute is liberally construed in favor of granting those acting under federal officers and agencies access to a federal forum in which to litigate the merits of defenses arising from their official duties. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2020 WL 365617, at *3 (N.D. Fla. Jan. 22, 2020) ("*3M I*"); *see also Watson v. Phillip Morris Cos.*, 551 U.S. 142, 150 (2007). This policy should not be frustrated by a "narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 207 (1969); *see also Law Offices of La Ley con John H. Ruiz, P.A. v. John Doe Borrowers*, No. 13-22476-CIV, 2013 WL 4502313, at *3 (S.D. Fla. Aug. 23, 2013). And this is particularly true where a private party claims to be acting under a federal officer. *Agyin v. Razman*, 986 F.3d 168, 174 (2d Cir. 2021).

42.     In evaluating a removing party's allegations in support of federal officer removal, a federal court applies the ordinary federal pleading standard, asking whether the allegations supporting removal are facially plausible. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2020 WL 5835311, at *2 (N.D. Fla. Oct. 1, 2020) (citing *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018)).

43.     28 U.S.C. § 1442(a)(1) authorizes the "removal of an entire case, even though only one of its controversies might involve a federal officer or agency." *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 844 (S.D. Ill. 2006); *see also Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463 (5th Cir. 2016).

44.     To remove an action under 28 U.S.C. § 1442(a)(1), a defendant must show: (a) it is a person; (b) it acted under a federal officer; (c) the suit is related to an action taken under color of federal office; and (d) the defendant has a colorable federal defense. *Caver v. Cent. Alab. Elec. Coop.*, 845 F.3d 1135, 1142–46 (11th Cir. 2017).

45.     <u>Defendants Are "Persons" for the Purpose of Section 1442(a)(1)</u>. It is well-settled that a corporate entity is a "person" for the purposes of 28 U.S.C. § 1442. *See, e.g., 3M I*, 2020 WL 365617, at *3. Defendants can therefore establish the first element of the federal officer removal test.

46.     <u>Defendants Are Either Agencies of the United States or Were Acting Under a Federal Officer</u>. Because Southeast Housing is an agency of the United States for purposes of 28 U.S.C. § 1442(a)(1), removal is proper under that statute. For purposes of the federal officer removal statute, the term "agency" includes "any corporation in which the United States has a proprietary interest." 28 U.S.C. § 451. Courts have recognized that corporate entities that are owned in part by the federal government are "agencies" under this definition. *Acron Invs., Inc. v.*

*Fed. Savs. & Loan Ins. Co.*, 363 F.2d 236, 240 (9th Cir. 1966); *Rauscher Pierce Refsnes, Inc. v. FDIC*, 789 F.2d 313, 314 (5th Cir. 1986).

47.     As explained above, the U.S. Navy has a proprietary interest in Southeast Housing in that it is one of two members of that limited liability company, which is the PPV for NAS Key West. Ex. 4 at 1, 47. Southeast Housing is therefore an "agency" of the United States and entitled to remove this action under 28 U.S.C. § 1442(a)(1). *See City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 389–90 (6th Cir. 2007).

48.     Moreover, even if Southeast Housing was not a federal agency for purposes of Section 1442(a)(1), the Defendants "acted under" a federal officer or agency for purposes of the federal officer removal statute. The words "acted under" in this context are to be interpreted broadly. *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, No. 18-cv-25460, 2019 WL 1915386, at *1 (S.D. Fla. Mar. 21, 2019) (citing *Watson*, 551 U.S. at 147). Courts credit the removing party's theory of the case for purposes of determining whether the removing party acted under a federal officer. *Georgia v. Heinze*, 637 F. Supp. 3d 1316, 1322 (N.D. Ga. 2022) (citing *Jefferson Cty. v. Acker*, 527 U.S. 423, 432 (1999).

49.     A defendant's "'acting under' must involve an effort to *assist*, or to help *carry out*, the federal superior's duties or tasks." *Watson*, 551 U.S. at 143. This will often involve the delegation of authority to act on the government's behalf, and a government contract is evidence of such delegation. *Id*. at 156. Furthermore, a defendant is "acting under" a federal officer where the defendant performed a job that, the federal government itself would have had to perform in the absence of a contract with a private entity. *Id*. at 154; *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir. 2010).

50.     Here, BBC-NSE "acted under" a federal officer or agency because it contracted with the federal government to own and operate housing at NAS Key West, an act or task the government would have had to perform had it not delegated this task to a private entity in which the government continues to have a management and ownership interest. *See Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (finding federal officer removal was appropriate where removing party worked "hand-in-hand with the federal government to achieve a task that furthers an end of the federal government."). Furthermore, the U.S. Navy formed Southeast Housing pursuant to Congressional authorization,[6] and Southeast Housing subsequently entered into an agreement with BBC Management to manage and maintain the residences at NAS Key West. The parties to these agreements—including the federal government—undertook these actions to fulfill the governmental function of housing military service members and their families, a task the federal government would have had to carry out itself absent an agreement with a private entity. The Defendants can therefore satisfy the second element of the federal officer removal test.

51.     The Suit Is Related to Actions Taken Under Color of Federal Office. The burden of satisfying this element of the federal officer removal test "is quite low." *Caver*, 845 F.3d at 1144.[7] There need not be a direct causal nexus between a defendant's actions under color of federal office and the plaintiff's claims; rather, the plaintiff's claims need only *relate to* defendant's actions taken under color of federal office, in the sense that they are connected to or associated with those actions. *See Caver*, 845 F.3d at 1144 ("the phrase 'relating to' is broad and requires only 'a "connection" or "association" between the act in question and the federal office.'") (citation

---

[6] *See* 10 U.S.C. §§ 2872, 2874–75.

[7] Courts also credit the removing party's theory of the case for purposes of determining whether there is a connection between the plaintiff's claims and the removing party's alleged conduct under color of federal office. *3M I*, 2020 WL 365617, at *4 (citing, *inter alia*, *Acker*, 527 U.S. at 432).

omitted); *see also Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc); *Sawyer v. Foster Wheeler, L.L.C.*, 860 F.3d 249, 258 (4th Cir. 2017); *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 470–71 (3d Cir. 2015). It is sufficient if the plaintiff's allegations are directed at the relationship between the defendant and the federal government, and it is not necessary that the defendant's complained-of conduct was itself done at the government's behest. *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944–45 (7th Cir. 2020).

52.     To satisfy this requirement of the federal officer removal test, Defendants "must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson v. Dow Chem Corp.*, 517 F.3d 129, 137–38 (2d Cir. 2008). And whether the relevant acts are within the scope of Defendants' official duties is a question that should be resolved in federal court as opposed to state court. *Bennett*, 607 F.3d at 1088.

53.     Here, the Plaintiffs' claims are connected to or associated with Defendants' alleged actions undertaken pursuant to a contractual agreement with the federal government to own, operate, and manage rental housing at NAS Key West. *See, e.g.*, Ex. 2 ¶¶ 1, 6, 8, 80–95. That contractual agreement, which included specific requirements for mold, lead-based paint, and asbestos-related maintenance, relates directly to the activities that form the basis of the Plaintiffs' complaint. Defendants therefore satisfy the third element of the federal officer removal test.

54.     <u>Defendants Have Colorable Federal Defenses</u>. Finally, Defendants have colorable federal defenses. There are "few limitations on what qualifies as a colorable federal defense." *Isaacson*, 517 F.3d at 138. The removing party's federal defense need not be "clearly sustainable."

*Willingham*, 395 U.S. at 407. Rather, it need only be "plausible,"[8] i.e., not "wholly insubstantial and frivolous." *3M I*, 2020 WL 365617, at *5.[9]

55.     Defendants possess at least two colorable federal defenses to Plaintiffs' claims. *First*, Defendants have a colorable federal defense in the form of the government contractor defense. *See Bennett*, 607 F.3d 1076. In *Bennett*, plaintiff air traffic controllers brought claims in state court against defendant mold remediation firms hired by the Federal Aviation Administration, and alleged the defendants negligently performed their contracts and exacerbated the mold contamination at the airport at which the plaintiffs worked. *Id*. at 1082. One of the defendants removed the action to federal court under 28 U.S.C. § 1442(a)(1) and identified the government contractor defense as the "colorable federal defense" needed to justify federal officer removal. *Id*. at 1084. The plaintiffs then moved to remand to state court. *Id.* The Sixth Circuit found that removal to federal court was proper under Section 1442(a)(1), and that the removing defendant had identified a colorable federal defense. In doing so, the Sixth Circuit noted it was "at least plausible" the government contractor defense could apply outside the context of military procurement contracts "because the Supreme Court noted that the origins of the defense, at least in part, were based upon a case that immunized a private contractor from liability arising out of its performance of a public works project." *Id.* at 1090 (citing *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 19 (1940)).

56.     *Second*, Defendants have a colorable federal defense based on derivative sovereign immunity. A federal government contractor shares the United States' immunity when the

---

[8] *Caver*, 845 F.3d at 1145.

[9] Courts also credit the removing party's theory of the case for purposes of determining whether the removing party has a colorable federal defense. *Heinze*, 637 F. Supp. 3d at 1322 (citing *Acker*, 527 U.S. at 432.

contractor acts pursuant to the authority validly conferred by the government. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166–67 (2016) (citing *Yearsley*, 309 U.S. at 21). This defense is available when the government directs a contractor "to do the very thing that is the subject of the [plaintiffs'] claim." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 n.6 (2001). The contractor is therefore entitled to claim immunity if it adhered to the terms of its contract with the government. *In re KBR, Inc. Burn Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014). Here, Defendants performed the acts about which the Plaintiffs complain in accordance with the terms of a contract with the U.S. Navy. Defendants therefore have a colorable defense of derivative sovereign immunity.

57.     For these reasons, Defendants can establish the fourth and final element of the federal officer removal test, and removal is proper under 28 U.S.C. § 1442(a)(1).

### C. *Diversity Jurisdiction*

58.     Pursuant to 28 U.S.C. § 1332(a)(1), this Court also has original jurisdiction over this action by reason of complete diversity of citizenship of the parties and an amount in controversy which exceeds the sum or value of $75,000, exclusive of interest and costs.[10]

59.     <u>Plaintiffs and Defendants Are Citizens of Different States</u>. As alleged in the Complaint, Plaintiffs are citizens of the State of Florida. Ex. 2, ¶¶ 14-69.

60.     None of the Defendants are citizens of the State of Florida. More specifically:

   a.   Defendant Balfour Beatty Communities, LLC, is a Delaware limited liability company with its principal place of business in the Commonwealth of Pennsylvania. *See* Ex. 2, ¶ 70. Balfour Beatty Communities, LLC's sole member is Balfour Beatty Investments, Inc., a Delaware corporation with its principal place of business in the Commonwealth of Pennsylvania.[11] Balfour Beatty Communities, LLC, is a citizen of Pennsylvania and Delaware.

---

[10]     Defendants are related entities and are represented by the same counsel in this action, and each consent to removal of this action to this Court based on diversity of citizenship. *See* 28 U.S.C. § 1446(b)(2)(A).

[11]     For diversity purposes, a limited liability company is a citizen of each state in which its members are citizens. *Technolojoy, LLC v. BHPH Consulting Servs., LLC*, No. 23-10874, 2023

b. Defendant Southeast Housing LLC is a Delaware limited liability company with its principal place of business in the Commonwealth of Pennsylvania. Southeast Housing LLC has two members: BBC Military Housing – Navy Southeast LLC, a Delaware limited liability company with its principal place of business in the Commonwealth of Pennsylvania, and the U.S. Department of the Navy. BBC Military Housing – Navy Southeast LLC's sole member is Balfour Beatty Military Housing Investments, LLC, a Delaware limited liability company with its principal place of business in the Commonwealth of Pennsylvania, whose sole member is Balfour Beatty Communities, LLC (discussed in Paragraph 60(a), *supra*). The U.S. Navy is not treated as a citizen of any State for purposes of diversity jurisdiction, and its membership in Defendant Southeast Housing LLC accordingly does not eliminate diversity jurisdiction.

c. Defendant Balfour Beatty Military Housing Management LLC is a Delaware limited liability company with its principal place of business in the Commonwealth of Pennsylvania. *See* Ex. 2, ¶ 72. Balfour Beatty Military Housing Management LLC's sole member is Balfour Beatty Communities, LLC (discussed in Paragraph 60(a), *supra*).

d. Defendant BBC Military Housing – Navy Southeast LLC is a Delaware Limited Liability Company with its principal place of business in the Commonwealth of Pennsylvania. *See* Ex. 2, ¶ 73. BBC Military Housing – Navy Southeast LLC's sole member is Balfour Beatty Military Housing Investments, LLC, whose sole member is Balfour Beatty Communities, LLC (discussed in Paragraph 60(a), *supra*).

e. Defendant Balfour Beatty Investments, Inc., is a Delaware corporation with its principal place of business in the Commonwealth of Pennsylvania.

61.     Accordingly, Defendants are not citizens of the State of Florida. *See* 28 U.S.C. § 1332(c)(1). Diversity of citizenship therefore exists between the parties. *See* 28 U.S.C. § 1332(a)(1).

62.     The Amount in Controversy Exceeds $75,000. For the Court to have original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), the amount in controversy must exceed $75,000.

---

WL 3884619, at *1 (11th Cir. June 8, 2023) (citing *Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011)).

63.     Here, the amount in controversy easily exceeds the $75,000 jurisdictional threshold. Plaintiffs have collectively made more than $5,000,000 in rental payments to Defendants. Plaintiffs assert that they would not have made those payments but for Defendants' allegedly false statements and omissions. Ex. 2, ¶ 806; *see id.* ¶ 849. Plaintiffs also allege they suffered substantial additional damages, including personal and property damages, future economic damages, and attorney's fees and costs. Finally, Plaintiffs claim they will need continued testing and medical monitoring as a result of Defendants' alleged conduct. *Id.*, ¶¶ 744-46; 753-57; 764–67; 779–80; 788; 794-98; 807–09; 818; 840; 850; pp. 172-73. It is thus readily apparent that the amount in controversy substantially exceeds $75,000.

64.     This case therefore satisfies the amount in controversy requirement of 28 U.S.C. § 1332(a).

### D. *Class Action Fairness Act*

65.     Finally, the Court also has jurisdiction over this case under the Class Action Fairness Act ("CAFA") as a "mass action." 28 U.S.C. §§ 1332(d)(11).

66.     Under CAFA, this Court has original jurisdiction over any civil action in which: (1) any class member is a citizen of a state different from any defendant (i.e., minimal diversity of citizenship); (2) the proposed class consists of at least 100 members; and (3) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5)(B), (d)(6).

67.     This jurisdiction extends over not only class actions filed pursuant to Rule 23, but also to mass actions, defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. 1332(d)(11)(B)(i). Such actions are removable where the other requirements of CAFA are met. *Id.*

68.     Here, Plaintiffs' action clearly satisfies each element required for mass action CAFA removal. The Complaint seeks monetary relief for nearly 200 persons and to address common questions of law or fact related to BBC's conduct.

69.     The action also satisfies the general requirements for CAFA removal.

    a.  <u>Minimum Diversity</u>. Each Plaintiff is a citizen of Florida, while all Defendants, as Delaware limited liability companies with principal places of business in Malvern, Pennsylvania, are citizens of Delaware and Pennsylvania. *See* 28 U.S.C. § 1332(d)(10) (providing that, for purposes of CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized"); Ex. 2, ¶¶ 14–74.)

    b.  <u>Class Size</u>. The number of plaintiffs exceeds 100. *Id.*, ¶¶ 151–738.

    c.  <u>Amount in Controversy</u>. The amount in controversy exceeds $5,000,000 total, and exceeds $75,000 with respect to each named Plaintiff. As noted in Paragraph 63 above, Plaintiffs have made more than $5,000,000 in rental payments to Defendants, which they assert they would not have made but for Defendants' allegedly false statements and omissions. Plaintiffs are also seeking substantial additional damages, including personal and property damages, future economic damages, and attorney's fees and costs, as well as costs associated with indefinite testing and medical monitoring.

70.     As this action meets the definition of a mass action and satisfies the threshold requirements of the CAFA, it is properly removed pursuant to 28 U.S.C. 1332(d)(11).

## IV.     THIS NOTICE IS TIMELY

71.     This Notice of Removal is timely because it was filed within 30 days after Defendants were served with the summonses and Complaint in this action on April 7, 2025. 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999) (holding that 30-day period to remove runs from the service of the summons and complaint).

## V.     VENUE OF REMOVED ACTION

72.     The United States District Court for the Southern District of Florida is the United States district court for the district embracing the State Court. Accordingly, venue is proper in this Court. 28 U.S.C. § 1441(a).

## VI.     NOTICE TO PLAINTIFFS AND THE STATE COURT

73.     A copy of this Notice of Removal is being served on Plaintiffs' counsel and will be filed with the clerk of the State Court pursuant to 28 U.S.C. § 1446(d).

## VII.     NON-WAIVER OF DEFENSES

74.     Defendants expressly reserve all defenses. By removing the State Court Action to this Court, Defendants do not waive any rights or defenses available under federal or state law. Defendants expressly reserve the right to move for dismissal of the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. Nothing in this Notice of Removal should be taken as an admission that Plaintiffs' allegations are sufficient to state a claim or have any substantive merit.

WHEREFORE, Defendants remove the above-captioned action from the State Court to the United States District Court for the Southern District of Florida.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Laura F. Farrant*
Laura F. Farrant
Florida Bar No. 85872
Laura.Farrant@lewisbrisbois.com
Veronica N. Daniel
Florida Bar No. 127309
Veronica.Daniel@lewisbrisbois.com
110 SE 6th Street, Suite 2600
Fort Lauderdale, FL 33301
Telephone: (954) 728-1280
Fax: (954) 728-1282

Michelle R. Gilboe (*pro hac vice* application forthcoming)
Michelle.Gilboe@lewisbrisbois.com
Mack H. Reed (*pro hac vice* application forthcoming)
Mack.Reed@lewisbrisbois.com
Wells Fargo Center
90 S. 7th Street, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 428-5000
Fax: (612) 428-5001

**PAUL HASTINGS LLP**

Brian D. Israel (*pro hac vice* application forthcoming)
brianisrael@paulhastings.com
Benjamin W. Snyder (*pro hac vice* application forthcoming)
bensnyder@paulhastings.com
2050 M Street, NW
Washington, DC 20036
Telephone: (202) 551-1700
Fax: (202) 551-1705

Evan J. Preminger (*pro hac vice* application forthcoming)
evanpreminger@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Fax: (212) 319-4090

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 6, 2024, the foregoing document was the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.

/s/ Laura F. Farrant
Laura F. Farrant
Florida Bar No. 85872

## <u>SERVICE LIST</u>

Robert J. McKee
Florida Bar No. 972614
THE MCKEE LAW GROUP, LLC
2800 South Flamingo Road
Davie, FL 33330
Telephone: (954) 888-9877
rmckee@themckeelawgroup.com

Kristina Baehr
Admitted *pro hac vice*
JUST WELL LAW, PLLC
2606 W 8th Street, Unit 2
Austin, TX 78703
Telephone: (512) 693-9029
kristina@well.law

Michael Weitzner
Admitted *pro hac vice*
Vincent J. Colatriano
Admitted *pro hac vice*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
Telephone (202) 220-9600
mweitzner@cooperkirk.com
vcolatriano@cooperkirk.com

*Attorneys for Plaintiffs*

25