## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE: KEY WEST NAS LITIGATION
CASE NO. 4:25-cv-10037

**District Judge David S. Leibowitz**
**Magistrate Judge Edwin G. Torres**

_____/

THIS DOCUMENT RELATES TO: ALL CASES

## DEFENDANT BALFOUR BEATTY INVESTMENTS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' MASTER COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.    Plaintiffs Have Not Proved That the Court May Exercise Specific Personal Jurisdiction over BBI Directly. ............................................................................................................... 2

        A.    BBI Itself Did Not Commit Torts or Breach Contracts in Florida. ............................ 3

        B.    BBI Does Not Operate a Business in Florida. ............................................................. 5

    II.    Plaintiffs Have Not Proved That the Court May Exercise Imputed Personal Jurisdiction over BBI. .................................................................................................................................. 6

        A.    There Is No Agency Relationship Sufficient for Personal Jurisdiction. ..................... 6

        B.    Plaintiffs Fail to Establish Veil-Piercing Sufficient for Personal Jurisdiction. ........... 8

CONCLUSION .......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bendix Home Sys., Inc. v. Hurston Enters., Inc.*,
  566 F.2d 1039 (5th Cir. 1978) ...........................................................................................9, 10

*Consol. Dev. Corp. v. Sherritt, Inc.*,
  216 F.3d 1286 (11th Cir. 2000) ..................................................................................................7

*Damian v. Yellow Brick Cap. Advisers (UK) Ltd.*,
  No. 19-21538, 2019 WL 5887360 (S.D. Fla. Nov. 12, 2019) ....................................................9

*In re Farmland Indus., Inc. v. Potash Corp.*,
  No. 3:05-cv-587-J-32MCR, 2007 WL 1018367 (M.D. Fla. Mar. 20, 2007)...........................8

*Ford v. Marquesas Cap. Partners, LLC*,
  No. 8:22-CV-2658, 2023 WL 6494870 (M.D. Fla. July 28, 2023) .........................................9

*Frybarger v. Salemme*,
  No. 22-61437-CIV, 2022 WL 18530012 (S.D. Fla. Dec. 28, 2022)......................................10

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
  218 F.3d 1247 (11th Cir. 2000) ...........................................................................................5, 6

*Georgetown Trading Co. v. Venturi Spirits, LLC*,
  No. 14-62277-CIV, 2015 WL 11197790 (S.D. Fla. Mar. 16, 2015) .......................................9

*Hard Candy, LLC v. Hard Candy Fitness, LLC*,
  106 F. Supp. 3d 1231 (S.D. Fla. 2015) ....................................................................................7

*Krinsk v. Suntrust Banks, Inc.*,
  No. 8:09-CV-909-T-27EAJ, 2010 WL 11475608 (M.D. Fla. Jan. 8, 2010).......................9, 10

*Medlink Legal Sys., LLC v. QIMA Ltd.*,
  794 F. Supp. 3d 1265 (S.D. Fla. 2025) ..................................................................................10

*Miller v. Toyota Motor Corp.*,
  No. 6:07-cv-1358, 2008 WL 516725 (M.D. Fla. Feb. 22, 2008).........................................6, 8

*Peach.com, LLC v. Peachly, LLC*,
  No. 21-20636-CIV, 2021 WL 7542983 (S.D. Fla. June 16, 2021)..........................................2

*Peruyero v. Airbus S.A.S.*,
  83 F. Supp. 3d 1283 (S.D. Fla. 2014) ......................................................................................8

*Piazenko v. Pier Marine Interiors GMBH*,
    314 So. 3d 438 (Fla. Dist. Ct. App. 2020) ................................................................2

*Prunty v. Arnold & Itkin LLP*,
    753 F. App'x 731 (11th Cir. 2018) .........................................................................6

*Regions Bank v. NBV Loan Acquisition Member LLC*,
    No. 21-23578-CIV, 2022 WL 1499942 (S.D. Fla. May 12, 2022).............................9

*State v. American Tobacco Co.*,
    707 So. 2d 851 (Fla. Ct. App. 1998)....................................................................6, 7

*Taylor v. Moskow*,
    717 F. App'x 836 (11th Cir. 2017) .........................................................................5

*Taylor v. Studygate, Inc.*,
    No. 0:25-CV-60053-DSL, 2025 WL 1658205 (S.D. Fla. June 3, 2025) ................2, 3

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...............................................................................................5

*Unitedhealthcare of Fla., Inc. v. American Renal Assocs. Holdings, Inc.*,
    No. 16-81180-CIV, 2017 WL 1832436 (S.D. Fla. May 8, 2017).............................6

**Statutes**

Fla. Stat. § 48.193(1)(a) ...............................................................................................3

Fla. Stat. § 48.193(1)(a)(1) .......................................................................................3, 5

Fla. Stat. §§ 48.193(1)(a)(2), (7)...................................................................................3

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ..............................................................1, 2, 3, 9

Federal Rule of Civil Procedure 12(b)(6) .......................................................................3

**INTRODUCTION**

Defendant Balfour Beatty Investments, Inc. ("BBI") is not a Florida company. It is not registered to do business in Florida, is not a party to any of the contracts at issue, and does not have any other direct business ties to Florida or the dispute in this case. The only connections BBI has to the case are its ties as a corporate parent of other Defendants. Because corporate affiliations are insufficient for the exercise of personal jurisdiction over a foreign defendant, the Court should dismiss all claims against BBI under Federal Rule of Civil Procedure 12(b)(2).

Plaintiffs' contrary contentions lack merit. They assert that they interacted with individuals who "identified themselves as representatives of BBI" about housing issues at Naval Air Station Key West ("NAS Key West"). Plaintiffs' Opp'n to Def. BBI's Mot. to Dismiss ("Opp'n") 4, Dkt. No. 172; *see* Master Complaint ("Complaint") ¶ 136, Dkt. No. 136. The uncontroverted evidence establishes, however, that none of those identified individuals is employed by BBI, and that references to "Balfour Beatty Investments" on their signature blocks and related materials merely reflected shared branding between Balfour Beatty Communities ("BBC"), BBI, and other Balfour Beatty entities—not that those individuals were acting on behalf of BBI specifically. Bitto Aff. ¶¶ 27–33, Dkt. No. 161-9. Plaintiffs also rely on generalized allegations that BBI is involved in managing military housing throughout the United States and at NAS Key West. Opp'n 1–2. Yet BBI manages and develops military housing at just three bases, none of which is in Florida, *see* Bitto Aff. ¶ 12, and BBI is not involved with the operation or day-to-day management of NAS Key West, *id.* ¶¶ 12–17, 26. Plaintiffs additionally argue that the relationship between BBI and BBC is "porous" due to members of the BBC board serving as officers for BBI and the two corporations sharing support staff, as subsidiary corporations often do. Opp'n 2, 4–5. But BBI and BBC are distinct corporate entities: BBC has its own finances; maintains separate books, records, and financial statements; and has its own separate employees. Bitto Aff. ¶¶ 17–25. And finally, while

1

Plaintiffs assert that BBC follows policies BBI established in operating its own military housing, Opp'n 3–4, BBC's decision to follow shared policies shows at most a push to promote consistency among Balfour Beatty entities, not control over BBC's daily management of NAS Key West.

For all of those reasons, Plaintiffs have failed to establish that BBI falls within Florida's long-arm statute or that the Court may impute its jurisdiction over the other Defendants to BBI. The Court should therefore dismiss the claims against BBI for lack of personal jurisdiction.

## ARGUMENT

Because BBI contradicted Plaintiffs' jurisdictional allegations via affidavits attached to its 12(b)(2) motion, Plaintiffs cannot rely on the Complaint to satisfy their burden of proof. *See Taylor v. Studygate, Inc.*, No. 0:25-CV-60053-DSL, 2025 WL 1658205, at *3 (S.D. Fla. June 3, 2025). Rather, the burden has shifted back to Plaintiffs to "*prove*—not merely allege—jurisdiction by affidavits, testimony, or other documents." *Id.* (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214–15 (11th Cir. 1999)). But Plaintiffs have not proved that the Court can exercise jurisdiction over BBI directly under Florida's long-arm statute, nor have they established grounds for imputing personal jurisdiction over BBI based on its ties to the other Defendants.[1]

## I. Plaintiffs Have Not Proved That the Court May Exercise Specific Personal Jurisdiction over BBI Directly.

The Court may not exercise specific personal jurisdiction over a non-resident defendant unless the plaintiff establishes that the defendant committed one of the specific acts enumerated in Florida's long-arm statute and the plaintiff's cause of action "arise[s] from" the enumerated act. *See Piazenko v. Pier Marine Interiors GMBH*, 314 So. 3d 438, 443–44 (Fla. Dist. Ct. App. 2020);

---

[1] If the Court does not agree, it should allow a short period of jurisdictional discovery limited to evidentiary issues that the Court deems contested, in order to prevent jurisdictional discovery from becoming a prolonged "vehicle for a 'fishing expedition.'" *Peach.com, LLC v. Peachly, LLC*, No. 21-20636-CIV, 2021 WL 7542983, at *2 (S.D. Fla. June 16, 2021) (citation omitted).

Fla. Stat. § 48.193(1)(a). Plaintiffs have not proven personal jurisdiction under that standard, either as to "committing a tortious act" or "breaching a contract" in Florida, Fla. Stat. §§ 48.193(1)(a)(2), (7), or as to "operating . . . a business" in Florida, *id.* § 48.193(1)(a)(1).

### A. BBI Itself Did Not Commit Torts or Breach Contracts in Florida.

Plaintiffs claim that BBI has "committ[ed] a tortious act" or "breach[ed] a contract" in Florida, Fla. Stat. §§ 48.193(1)(a)(2), (7), because individuals who "identified themselves as representatives of BBI" purportedly interacted with Plaintiffs about housing issues at NAS Key West, Opp'n 4 (citing Compl. ¶ 136). But Defendants submitted unrebutted affidavits and evidence that (1) these individuals are not employees of BBI; and (2) these individuals' use of the "Balfour Beatty Investments" branding in email signatures and other documents did not identify the individuals as part of the "Balfour Beatty Investments, Inc." legal entity. *See* Omrod Aff. ¶¶ 5–10, Dkt. No. 161-13; Bitto Aff. ¶¶ 5–8, 17–25; Supp. Omrod Aff. ¶¶ 1–9. Because Plaintiffs have not submitted evidence to the contrary, the Court lacks personal jurisdiction over BBI.

As an initial matter, Plaintiffs are wrong to suggest that the Court's order on Defendants' Rule 12(b)(6) motion establishes personal jurisdiction over BBI. *See* Opp'n 8 (citing Order, Dkt. No. 171). The Court expressly rejected that theory. *See* Order 5 n.2. ("[T]his Order addresses only whether claims asserted against BBI survive dismissal under Rule 12(b)(6)."). Plaintiffs' argument also conflates the appropriate legal standards. While a court accepts a complaint's well-pled facts as true on a Rule 12(b)(6) motion, here BBI's Rule 12(b)(2) motion properly relies on evidence that contradicts Plaintiffs' allegations, and Plaintiffs must therefore "*prove*—not merely allege— jurisdiction by affidavits, testimony, or other documents." *Taylor*, 2025 WL 1658205, at *3.

Plaintiffs have not done so. Plaintiffs' Lacour Declaration, Dkt. No. 172-1, attaches emails showing that several individuals—whom Plaintiffs rely on in an attempt to establish personal

3

jurisdiction over BBI, *see* Compl. ¶ 136—included the "Balfour Beatty Investments" branding or logo in their email signatures.  Lacour Decl., Exs. 1–13, 15.  One employee, Demetraise Wynn, included "Balfour Beatty Investments" in her signature block on an electronic DocuSign form.  Lacour Decl., Exs. 14, 16.  And Plaintiffs also submit a "Community Incident Report" with the same branding logo.  Lacour Decl., Ex. 17.  None of that, however, contradicts BBI's evidence that those individuals who purportedly "identified themselves as representatives of . . . [BBI]," Compl. ¶ 136, were in fact BBC employees, *see* Bitto Aff.  ¶¶ 26–33.  The evidence that BBI submitted explained that Plaintiffs' reliance on the "Balfour Beatty Investments" branding is misplaced, because that branding does not identify employees as part of the "Balfour Beatty Investments, Inc." legal entity.  Omrod Aff. ¶ 5.  Instead, the "Balfour Beatty Investments" logo, just like the "Balfour Beatty Communities" logo, stands for one of Balfour Beatty plc's "Specialist Brands."  Supp. Omrod Aff. ¶ 5, Ex. A.  And while Balfour Beatty has adopted a "Branded Emails & Business Cards Policy & Procedure" that guides employees' branding choices, *see id.* ¶ 6, Ex. B, individual employees ultimately select their own email signatures, logos, and branding, *id.* ¶¶ 7–9, Exs. C, D.  The fact that a handful of BBC employees included "Balfour Beatty Investments" branding in their email signature blocks or other documents does not convert them into representatives of BBI and certainly does not subject BBI to personal jurisdiction in Florida.[2]

Plaintiffs' "[a]dditional evidence" of BBI's purported "direct involvement" in the conduct alleged in this suit does not establish personal jurisdiction, either.  Opp'n 10.  Plaintiffs argue that BBI officials "play a direct role in BBC's management and operations," *id.*, but they have failed

---

[2] Plaintiffs claim the Omrod Affidavit is "contradict[ory]" because some employees use the "Balfour Beatty Investments" logo and others use a "Balfour Beatty Communities" logo in their email signatures.  Opp'n 9 n.8.  But as compliance with the corporate branding policy is self-directed, *see* Supp. Omrod Aff. ¶¶ 7–9, Exs. C, D, it is unsurprising that employees sometimes use signature blocks that do not perfectly align with corporate policy.

to rebut evidence that BBI has no management control over NAS Key West and plays no role in its "day-to-day" operations, *see* Bitto Aff. ¶¶ 6, 17.  Shared officers are not a basis for exercising personal jurisdiction when distinct corporate entities have adhered to corporate formalities.  *See United States v. Bestfoods*, 524 U.S. 51, 69–70 (1998).  And while Plaintiffs also contend that BBI is a "manager, developer, and investor in military housing throughout the United States," Opp'n 10 (citing Weitzner Decl., Ex. 1, Dkt. No. 62-2), that generalized assertion does not establish a causal connection to Florida or NAS Key West—the issue relevant here, *see* Bitto Aff. ¶¶ 12–13 (explaining that all of the military housing projects for which BBI serves as the investment ownership vehicle are located outside of Florida).

### B.      BBI Does Not Operate a Business in Florida.

For similar reasons, Plaintiffs also cannot establish personal jurisdiction over BBI based on the operation of a business in Florida.  *See* Fla. Stat. § 48.193(1)(a)(1).  To the contrary, BBI presented evidence unequivocally demonstrating that BBI conducts no business activities in Florida, *see* Bitto Aff. ¶¶ 6–8, and Plaintiffs point to nothing that undermines that showing.

To establish jurisdiction, Plaintiffs must show "a general course of business activity in the state for pecuniary benefit" that bears some causal nexus to Plaintiffs' causes of action.  *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).  Plaintiffs have not even attempted to rebut evidence that BBI has no offices, no license to do business, and no clients in Florida.  Bitto Aff. ¶¶ 6–8.  Nor have Plaintiffs rebutted evidence that BBI derives no "direct revenue from any business activities conducted in Florida."  *Id.* ¶ 8.  Those facts weigh against personal jurisdiction.  *See Taylor v. Moskow*, 717 F. App'x 836, 840 (11th Cir. 2017).

Plaintiffs instead attempt to rely on their allegation that BBI derives "indirect revenue" from "military housing in Florida," Compl. ¶ 122; *see* Opp'n 11.  But indirect revenue derived

5

through a subsidiary does not establish personal jurisdiction under Florida's long-arm statute.  *See Unitedhealthcare of Fla., Inc. v. American Renal Assocs. Holdings, Inc.*, No. 16-81180-CIV, 2017 WL 1832436, at *5 (S.D. Fla. May 8, 2017) (profit distributions from a subsidiary to a parent are "inadequate to confer personal jurisdiction"); *Est. of Miller ex rel. Miller v. Toyota Motor Corp.*, No. 6:07-cv-1358, 2008 WL 516725, at *5 (M.D. Fla. Feb. 22, 2008) (Florida revenue passing through subsidiaries is insufficient to establish personal jurisdiction).  Moreover, "the percentage of overall revenue gleaned from Florida clients" is just one of four factors for determining whether one is operating a business in Florida, *Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735 (11th Cir. 2018) (citation omitted), and Plaintiffs' fail to otherwise establish relevant business activity.  For example, Plaintiffs point to a corporate report explaining that BBI derives value from "US military housing."  Opp'n 11 (citing Weitzner Decl., Ex. 1 at 21).  But deriving value from projects across the United States does not establish a causal nexus to Plaintiffs' causes of action in Florida.  *See Future Tech. Today*, 218 F.3d at 1249–50.

## II.     Plaintiffs Have Not Proved That the Court May Exercise Imputed Personal Jurisdiction over BBI.

Plaintiffs also attempt to establish personal jurisdiction by imputing personal jurisdiction over the other Defendants to BBI, *see* Opp'n 12–18, but Plaintiffs have failed to carry the heavy burden necessary to make such a showing.

### A.     There Is No Agency Relationship Sufficient for Personal Jurisdiction.

Plaintiffs argue that the Court has personal jurisdiction over BBI because BBC acts as a mere agent of BBI in Florida.  *See* Opp'n 13.  Imputing jurisdiction over a parent corporation based on the presence of its subsidiary in a state, however, requires a showing that the parent exercised a "very significant" amount of control over the subsidiary.  *State v. American Tobacco Co.*, 707 So. 2d 851, 855 (Fla. Ct. App. 1998).  This Court cannot impute jurisdiction over a parent if its

6

subsidiary in the forum state "has preserved some semblance of independence from the parent." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000). Instead, the plaintiff must show that the parent had "operational control" over a subsidiary's "day to day . . . internal affairs or basic operations" at a "very significant" level, *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1241 (S.D. Fla. 2015) (citations omitted), such that the subsidiary "manifests no separate corporate interests of its own and functions solely to achieve the purposes" of the parent, *American Tobacco Co.*, 707 So. 2d at 855 (citations omitted).

Plaintiffs fail to make such a showing. As BBI has demonstrated, BBC conducts its own business in Florida. BBC, not BBI, contracted with the Navy to operate NAS Key West, and BBC's own employees manage BBC's project at NAS Key West. Bitto Aff. ¶¶ 15, 22, 26. Plus, BBC maintains independence from BBI: It holds its own meetings, pays its own expenses, keeps its own records, and otherwise maintains distinct corporate purposes. *Id.* ¶¶ 17–26. Plaintiffs therefore cannot establish that BBC has "no separate corporate interests of its own" or that it "functions solely to achieve the purposes" of BBI. *American Tobacco Co.*, 707 So. 2d at 855.

Plaintiffs rely on four allegations in arguing otherwise, but each fails. First, Plaintiffs present a statement on BBI's website that "[r]esidential ventures in North America are managed through [BBC], a full-service real estate company," Opp'n 14 (quoting Weitzner Decl., Ex. 2 at 1, Dkt. No. 62-3), but that statement confirms that BBC has its own business managing Balfour Beatty's North American holdings. Second, Plaintiffs highlight that BBI is the sole member and parent of BBC, and that BBI and BBC share some board members and business departments. Opp'n 14. Direct ownership does not establish the sort of "high and very significant" "*operational* control" necessary to impute personal jurisdiction based on agency, *Hard Candy*, 106 F. Supp. 3d at 1241 (emphasis added), however, and neither does sharing corporate officers or business

7

departments, *see Miller*, 2008 WL 516725, at *5.  Third, Plaintiffs assert that the shared branding between BBC and BBI indicates an agency relationship, but shared email blocks—like shared corporate letterhead—do not establish an agency relationship for personal jurisdiction purposes. *See In re Farmland Indus., Inc. v. Potash Corp.*, No. 3:05-cv-587-J-32MCR, 2007 WL 1018367, at *6–7 (M.D. Fla. Mar. 20, 2007).  Finally, Plaintiffs claim that BBC and BBI are part of a "confusing conglomerate." Opp'n 14 n.15.  But the corporate relationships here are hardly atypical for multinational businesses, and the most relevant distinction—that BBI runs some military housing projects in other parts of the United States but is not involved in the operation of this particular project, *see* Omrod Aff. ¶¶ 6–7—is straightforward.  Plaintiffs' professed confusion about that structure provides no basis for asserting personal jurisdiction under an agency theory.

**B.     Plaintiffs Fail to Establish Veil-Piercing Sufficient for Personal Jurisdiction.**

Plaintiffs separately claim that the Court can impute jurisdiction to BBI under a veil piercing or "alter ego" theory.  Opp'n 15.  But Plaintiffs have a heavy burden to pierce the corporate veil and have neither alleged sufficient facts nor submitted sufficient evidence to carry that burden.

At the outset, Plaintiffs attempt to avoid their burden by contending that they need only allege the first element of veil-piercing (that the parent company "dominated and controlled" the subsidiary), *id.*, not the other two required elements (improper purpose and injury).  But it is well settled that plaintiffs must satisfy all three elements of the veil-piercing test, even at the pleading stage. *See, e.g.*, *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1289 (S.D. Fla. 2014) (explaining, at the motion to dismiss stage, that a plaintiff seeking to pierce the corporate veil must show both that the subsidiary is a "mere instrumentality" of the parent and "improper conduct" (citation omitted)); *Krinsk v. Suntrust Banks, Inc.*, No. 8:09-CV-909-T-27EAJ, 2010 WL 11475608, at *6 (M.D. Fla. Jan. 8, 2010) (holding that "claims against [defendant] must be dismissed" where "the

complaint is devoid of any facts which would support a contention that the corporate form was used for an improper purpose which caused injury to [plaintiff]").[3]   Neither of the decisions Plaintiffs invoke suggests otherwise.  *See* Opp'n 15.  In *Damian v. Yellow Brick Capital Advisers (UK) Ltd.*, No. 19-21538, 2019 WL 5887360 (S.D. Fla. Nov. 12, 2019), the court permitted the case to proceed only after concluding that the plaintiff "ha[d] sufficiently alleged Yellow Brick US was created and used for an improper purpose" (the second element) and that the complaint's allegations of causation "suffice[d] to satisfy element three of the alter ego test."  *Id.* at *10.  And in *Georgetown Trading Co. v. Venturi Spirits, LLC*, No. 14-62277-CIV, 2015 WL 11197790 (S.D. Fla. Mar. 16, 2015), the court did not rely on an alter ego theory at all, instead concluding that the complaint adequately alleged that the individual defendants had themselves been involved in trademark infringement.  *See id.* at *2; *see also id.* (distinguishing cases in which, as here, "the defendant produced affidavits in contravention of the allegations").

In any event, even if Plaintiffs need only allege the first element of the veil piercing test to survive a Rule 12(b)(2) motion, they have failed to establish the "requisite control" under this factor.  *See* Opp'n 16.  Assuming that BBI's sole ownership of BBC constitutes "common stock ownership," *see Damian*, 2019 WL 5887360, at *8, a parent owning all its subsidiary's stock does not justify piercing the veil absent aggravating circumstances, *see Bendix Home Sys., Inc. v. Hurston Enters., Inc.*, 566 F.2d 1039, 1042 (5th Cir. 1978).  Overlap between BBI's and BBC's officers and business functions is also insufficient to pierce the veil without showing that the parent

---

[3] *See also Regions Bank v. NBV Loan Acquisition Member LLC*, No. 21-23578-CIV, 2022 WL 1499942, at *6–7 (S.D. Fla. May 12, 2022) (explaining that "a plaintiff must *allege* three things to state an alter ego claim" and assessing the adequacy of the plaintiff's allegations on all three elements (emphasis added)); *Ford v. Marquesas Cap. Partners, LLC*, No. 8:22-CV-2658, 2023 WL 6494870, at *3 (M.D. Fla. July 28, 2023) (dismissing complaint where "[p]laintiff's allegations do not sufficiently state facts supporting the three elements of an alter ego liability claim," including "how [d]efendants abused the corporate form").

manipulated or conflated the corporate form. *Id.* Plaintiffs present no such evidence. Further, the Bitto and Omrod Affidavits contradict Plaintiffs' argument that BBI acts through BBC to manage its housing projects at NAS Key West. *See, e.g.*, Bitto Aff. ¶¶ 14–16; Omrod Aff. ¶¶ 6–7.

Finally, Plaintiffs are attempting to use an alter ego theory to extend Florida's long-arm statute from BBC, a non-resident corporation with contacts in Florida, Compl. ¶ 99, to BBI, another non-resident corporation with no contacts in Florida, Compl. ¶ 100. Courts in this district have repeatedly "declined to apply the alter ego theory of jurisdiction to a non-resident via application of Florida's long-arm statute to another non-resident." *Medlink Legal Sys., LLC v. QIMA Ltd.*, 794 F. Supp. 3d 1265, 1274 (S.D. Fla. 2025); *see also Frybarger v. Salemme*, No. 22-61437-CIV, 2022 WL 18530012, at *6 (S.D. Fla. Dec. 28, 2022). Plaintiffs urge the Court to ignore that body of law and instead cite two cases that did not reach the issue of imputing jurisdiction from one non-resident to another based on an alter ego theory. *See* Opp'n 17–18. Although there may be rare exceptions when using an alter ego theory in such a way may be appropriate, like when it is "undisputed that the two relevant companies were alter egos," Opp'n 17, a non-resident like BBI normally cannot be haled into a Florida court based on an alter-ego relationship with another non-resident like BBC. *See Medlink*, 794 F. Supp. 3d at 1274; *Frybarger*, 2022 WL 18530012, at *6. For that reason, too, the Court cannot exercise imputed jurisdiction over BBI.[4]

**CONCLUSION**

For the reasons stated, BBI respectfully requests that the Court grant its Motion to Dismiss Plaintiffs' Master Complaint and dismiss BBI from this lawsuit for lack of personal jurisdiction.

---

[4] For all of the reasons discussed above and in the motion itself, Plaintiffs also fail to show that the exercise of jurisdiction over BBI would comport with constitutional due process. *See* Mot. to Dismiss Pls.' Master Compl. 17–18, Dkt. No. 161.

Dated: May 25, 2026

Respectfully submitted,

*/s/ Dexter Romanez*

**QUINTAIROS, PRIETO, WOOD &
BOYER, P.A.**

Dexter Romanez, Esq.
Florida Bar No. 780561
dexter.romanez@qpwblaw.com
Reginald J. Clyne, Esq.
Florida Bar No. 654302
reginald.clyne@qpwblaw.com
Eddie L. Holiday III, Esq.
Florida Bar No. 109918
eddie.holiday@qpwblaw.com
9300 South Dadeland Boulevard, Fourth
Floor
Miami, FL 33156
Tel: (305) 670-1101
Fax: (305) 670-1161

**PAUL HASTINGS LLP**

Brian D. Israel (admitted *pro hac vice*)
brianisrael@paulhastings.com
Benjamin W. Snyder (admitted *pro hac vice*)
bensnyder@paulhastings.com
2050 M Street, NW
Washington, DC 20036
Tel: (202) 551-1700
Fax: (202) 551-1705

Avi Weitzman (admitted *pro hac vice*)
aviweitzman@paulhastings.com
Evan J. Preminger (admitted *pro hac vice*)
evanpreminger@paulhastings.com
200 Park Avenue
New York, NY 10166
Tele: (212) 318-6000
Fax: (212) 319-4090

*Attorneys for Defendants*

11

**<u>CERTIFICATE OF SERVICE</u>**

 **I HEREBY CERTIFY** that on May 25, 2026, I caused a true and correct copy of the

foregoing to be filed with the Clerk of the Court using the CM/ECF system.

*/s/ Dexter Romanez*  
Dexter Romanez, Esq.

12
